**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**
United States Courthouse
402 East State Street, Room 255
Trenton, New Jersey   08608

**Hon. Christine M. Gravelle**                                                                                        609-858-9370
United States Bankruptcy Judge                                                                                  Fax   609-989-0431

### LETTER DECISION

August 25, 2014

**Sent via ECF & email**

Ross J. Switkes, Esquire
Trenk DiPasquale et al.
347 Mt. Pleasant Ave.
West Orange, NJ  07052                    rswitkes@trenklawfirm.com

Carol L. Knowlton, Esquire
Gorski & Knowlton, PC
311 Whitehorse Avenue, Suite A
Hamilton, NJ  08610                            cknowlton@gorskiknowlton.com


Re:   **Andrea Dobin v. Philip R. Slater**
      **Chapter 7 – Case No. 12-18976 (CMG)**
      **Adv. Pro. No.   12-01921 (CMG)**
      **Objection to Dischargeability Trial**

Dear Litigants:

I.   Introduction

The Chapter 7 Trustee (the "Trustee") brought suit against Philip R. Slater ("Debtor") alleging that he concealed property of the estate within one year prior to his filing, with the intent to hinder, delay, or defraud the trustee and his creditors, and that he knowingly and fraudulently made a false oath in connection with his case.  The Trustee requests that this Court deny Debtor's discharge pursuant to 11 U.S.C §§727(a)(2)(A) and (a)(4)(a).  Following trial, and for the reasons set forth herein, the Court finds in favor of Debtor and orders that he be granted a discharge.

II.   Jurisdiction

This Court has jurisdiction over this contested matter under 28 U.S.C. § 1334(a), 28 U.S.C. § 157(a) and the Standing Order of Reference by the United States District

Court for the District of New Jersey dated July 10, 1984, as Amended on October 17, 2013, referring all proceedings arising under Title 11 of the United States Code to the bankruptcy court.  This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(A) & (J).  Venue is proper in this Court pursuant to 28 U.S.C. § 1408.  Pursuant to Fed. R. Bankr. P. 7052, the Court issues the following findings of fact and conclusions of law.

III.    Relevant Facts

The Debtor and his bankruptcy counsel ("Counsel") testified at trial.  The Court relies on the Joint Stipulated Facts ("JSF") submitted by the parties and will not repeat the details here.  The following are the most pertinent facts as set forth in the JSF and as developed at trial:

- Counsel prepared Debtor's schedules using information gathered from personal interviews with Debtor and from documents provided by Debtor, and from a Bankruptcy Questionnaire completed by Debtor.
- Debtor reviewed and signed the schedules under oath.
- Debtor's schedules listed his home as jointly owned when, in fact, he had transferred his share of the home to his wife the year before his filing.
- When questioned about this discrepancy at the 341 meeting, Debtor told the Trustee that Counsel advised him that the Code allowed the Trustee to void the transfer.  Debtor testified that Counsel advised him that the trustee would consider the transferred interest as part of the Estate.
- Debtor was the named executor and trustee under his deceased mother's will and testamentary trust (the "Trust").
- Debtor and his family members were beneficiaries of the Trust, which held a single residential property (the "Property").
- Pre-petition, Debtor and his company made capital improvements to the Property, using Debtor's funds and funds from his mother's estate, and from a home equity line of credit on the Property.
- Debtor's schedules did not include his interest in the Trust or his use of funds to make capital improvements to the Property.
- Debtor's schedules did not include his interest in a life insurance policy.
- The Trustee discovered these assets after the initial 341 examination and reconvened the examination where Debtor testified truthfully as to the assets and thereafter supplied the Trustee with complete information about those assets.
- The Trustee also learned that a joint tax refund, which Debtor disclosed on his Schedule B, had been deposited into an account held solely in the name of Debtor's wife.  The testimony was unclear as to whether Debtor

2

and his wife received their tax refund before or after the filing of the petition.

IV. Legal Analysis

The discharge provision of section 727 is described as "the heart of the fresh start provisions of the bankruptcy law." Rosen v. Bezner, 996 F.2d 1527, 1531 (3d Cir. 1993) (citing H.R. Rep. No. 595, 95th Cong., 1st Sess. 384 (1977)). Under Bankruptcy Rule 4005, the objector to a debtor's discharge bears the burden of proving her case by a preponderance of the evidence. See Grogan v. Garner, 498 U.S. 279, 287 (1991). A total bar to discharge under section 727 is an extreme remedy, and therefore the section is construed liberally in favor of the debtor. See Rosen v. Bezner, supra, 996 F.2d at 1534; see also Stapleton v. Yanni (In re Yanni), 354 B.R. 708, 711 (Bankr. E.D. Pa. 2006)("[Denial of discharge] is by far the most severe penalty a Chapter 7 debtor can receive in the life of a bankruptcy case"). However, it is also well accepted that only the "honest but unfortunate debtor" is entitled to a discharge. See Grogan v. Garner, supra, 498 U.S. at 286-87.

a. Section 727(a)(2)(A)

First, the Court finds that the Trustee failed to prove her case under section 727(a)(2), which provides that a debtor shall be denied a discharge if, "the debtor, with intent to hinder, delay or defraud a creditor or an officer of the estate . . . has transferred, removed, destroyed, mutilated, or concealed . . . (A) property of the debtor of the debtor within one year before the date of filing of the petition." The Third Circuit notes that a party seeking to bar discharge under this exception must prove *both* an act and improper intent were present during the one year period before the bankruptcy. See Rosen v. Bezner, supra, 996 F.2d at 1531. Because a debtor is unlikely to admit directly that his or her actions were motivated by fraud, intent may be inferred using circumstantial evidence or inferences drawn from a course of conduct. See Wachovia Bank, N.A. v. Spitko (In re Spitko), 357 B.R. 272, 301 (Bankr. E.D. Pa. 2006).

Essentially, the Trustee argues that Debtor's failure to disclose certain assets on his schedules constitutes "concealment" under said section.[1] This Court is persuaded by Judge Steckroth's analysis of section 727(a)(2)(A) as set forth in his unreported decision of In re Corona, 210 WL 1382122, *14 (Bankr. D.N.J. 2010). The court held that "concealment", in the context of this section, requires proof that the debtor concealed assets during the year before the petition date. See id. A debtor's omission of the asset from the schedules is not a violation of section 727(a)(2)(A) since to hold otherwise

---

[1] "Concealment is not confined to physical secretion. It covers other conduct, such as placing assets beyond the reach of creditors or withholding knowledge of the asset by failure or refusal to divulge owed information." 6 Collier on Bankruptcy P 727.02.

3

would negate the purpose of section 727(a)(4)(A), which directly addresses such omission. See id.

To the extent that Debtor's transfer of his interest in his residence to his wife and his deposit of his interest in their joint tax refund into his wife's account may be used to argue fraudulent concealment pursuant to section 727(a)(2)(A), the Court finds no actual intent to hinder, delay or defraud creditors on the Debtor's part. The fact that Debtor listed his home as jointly owned on his schedules, combined with his testimony of his understanding of the Trustee's rights in that interest as discussed infra, convinced the Court that he did not make the transfer to conceal his interest from the Trustee. If he had failed to list any interest in the home and further failed to disclose the transfer, this Court's finding may have been much different.

As to the deposit of Debtor's interest in the tax refund into his wife's account, he testified that he had no bank account of his own, and that he and his wife used her account to pay their bills. According to Debtor, this has been their practice for a number of years. There was no testimony as to why Debtor and his wife began this practice.[2] Debtor further testified that he earned no income during the tax year upon which the refund was based. Since his wife was the only income earner during that year, he believed she generated the tax refund. While this fact alone would not erase Debtor's interest in the tax refund for bankruptcy purposes, it, in conjunction with the fact that Debtor disclosed the full tax refund on his Schedule B, supports his lack of fraudulent intent to conceal the refund. The Court cannot find that Debtor and his wife used an account held solely in her name in order to avoid Debtor's creditors.

    b. Section 727(a)(4)(A)

The Court's decision to allow Debtor's discharge in spite of the Trustee's claims he violated section 727(a)(4)(A) is a more difficult one. Section 727(a)(4) provides that a debtor shall be denied a discharge if "the debtor knowingly and fraudulently, or in connection with the case – (A) made a false oath or account." To meet her burden, a party must prove by a preponderance of the evidence: 1) the defendant made a statement under oath; 2) the statement was false; 3) the defendant knew the statement was false; 4) the defendant made the statement with fraudulent intent; and 5) the statement related materially to the bankruptcy case. Panda Herbal Int'l, Inc. v. Luby (In re Luby), 438 B.R. 817, 833 (Bankr. E.D. Pa. 2010).

In this matter, Debtor acknowledged that his petition and schedules were inaccurate because they did not list all of his assets. He acknowledged that he signed his

---

[2] The listing of Debtor's bank accounts on Schedule B is confusing and is discussed infra. However, the information was not addressed at trial and the Court will avoid making assumptions.

4

petition and schedules under oath.[3]  Clearly, the omitted information was material to the bankruptcy case, as it related to assets that the Trustee is now able to pursue for the benefit of the creditors.  Therefore, there is no serious dispute that elements 1, 2 and 5 have been satisfied.

The analysis of element 3, that the Debtor knew the statement was false, is muddier.  Debtor testified that, as of the time of trial, he knew that certain items omitted from the schedules were assets with value, and that all assets, regardless of whether he believed they had value, should have been disclosed.  But, he also testified that, at the time he signed the schedules, he had disclosed all of the assets to Counsel and he relied on Counsel to prepare the schedules properly.  As discussed below, Debtor credibly testified as to his understanding of why certain assets were correctly omitted from his schedules. [4]

The primary issue in the section 727(a)(4)(A) analysis is whether debtor made false oaths with fraudulent intent.  The party objecting to discharge must prove an "actual intent on the part of the bankruptcy to hinder, delay, and defraud his creditors."  In re Georges, 138 Fed. Appx. 471, 472 (3d Cir. 2005)(quoting In re Topper, 229 F.2d 691, 692 (3d Cir. 1956)).  The advice of counsel may provide an excuse for an inaccurate or false oath.  Id.

The Court heard testimony from Debtor and Counsel and found both credible.  However, inconsistencies between the Bankruptcy Questionnaire and the Schedules, similarities in the testimony of both witnesses, difficulties inherent in the representation of debtors generally, and the high standard set for denial of discharge support the Court's conclusion that a discharge should be granted to Debtor.

Through their testimony, Debtor and Counsel agreed that Debtor brought a number of folders holding documents relevant to Debtor's assets and liabilities to Counsel's office for his review and use in preparing Debtor's bankruptcy filing, that Debtor completed a Bankruptcy Questionnaire supplied by Counsel, that Counsel used information gathered at their in person meetings and from the Bankruptcy Questionnaire to prepare Debtor's petition and schedules.  Both testified that they reviewed the folders together.  For example, Counsel testified as to reviewing paperwork relating to lawsuits involving Debtor's Philadelphia properties.  Testimony differed as to what information Debtor actually supplied to Counsel and what information Counsel reviewed.

---

[3] Debtor testified that he did not review every page of his schedules before signing, that he did not review them with Counsel, and that he signed "where tabbed."  Counsel's testimony conflicted with this.

[4] The Court acknowledges that Debtor's understanding was incorrect and that Counsel's testimony supports the Court's belief that Counsel did not intend to convey any such misunderstanding to Debtor.

5

The Bankruptcy Questionnaire requested information about "education IRAs and 529 Plans." Debtor listed two accounts for his children totaling approximately $14,000.00. However, those accounts were not set forth on Schedule B. Counsel testified that his exclusion of the accounts was not necessarily an oversight and that he could have made the decision to exclude information regarding Debtor's accounts from the schedules since he was not sure whether 529 plans are property of a debtor estate. This is inconsistent with the clear "full disclosure" mandate of the Code.

Counsel testified that he recalled that Debtor expected to receive a tax refund, but that he had not received it before the filing. The full tax refund is properly listed on Debtor's Schedule B as a joint asset. Both testified there was no discussion as to where the refund check would or should be deposited . The Court does not find that unusual. Schedule B also lists, on three separate, single-spaced lines: "Joint Checking-PNC," "Citizen's Bank," and "Business Checking-PNC." The third line, "Business Checking-PNC" is the only account that has a reference to ownership and value, disclosing joint ownership with a balance of $42.52. There was no testimony explaining these three assets, but their presentment as such on Schedule B raises questions and indicates lack of attention on the part of the preparer.

Schedule A discloses Debtor's ownership of two properties in Philadelphia. Debtor testified that Counsel explained that he need not list his third Philadelphia property because title had been foreclosed. The Bankruptcy Questionnaire does not request information about ownership of real property, and the Philadelphia properties do not appear on the Bankruptcy Questionnaire, although secured debts associated with those properties appear. Debtor did not appear to understand that Counsel was not advising him that information about the foreclosed property was not important. In fact, Counsel properly listed that property in the SOFA. This is one example of Debtor's misunderstanding of the bankruptcy process and of his reliance on Counsel.

Counsel testified that he always discusses ownership of insurance policies with his bankruptcy clients and that Debtor did not tell him about any life insurance policies. He stated that he emphasized Debtor's duty of full disclosure in his schedules, although he may not have provided details of the implications of failure to disclose.

Debtor's Schedule B does not disclose any interest in insurance policies. The Bankruptcy Questionnaire asks Debtor to list his "[i]nterests in insurance policies" and instructs Debtor to "[n]ame insurance company of each policy and itemize surrender or refund value of each." Debtor left blank the answer box for insurance policies and inserted "0" in the column titled "[a]mount ($)." The Debtor provided payment amounts for Homeowner and Auto insurance on page of the Bankruptcy Questionnaire asking for expense information. However, no information regarding life insurance payments is

6

requested specifically on the Questionnaire.[5] Debtor's testimony about his failure to disclose his interests in life insurance policies was confusing. He testified that he told Counsel about his policy with Prudential Life, and that Counsel told him it was not necessary to list the policy because, if he had taken a loan from the policy, he would have to pay it back with interest. Debtor testified he understood this to mean that the policy had no value for the Trustee, another example of Debtor's lack of understanding. He also testified, credibly, that had he known the policy had a cash value, he would have used it himself to pay his bills.

The most significant omission from the schedules is the Debtor's interest in the Trust. Debtor testified that, at the time he filed his petition, he was not earning income through his construction company, he had marital problems, and was trying to support, both financially and emotionally, a younger brother with substance abuse problems. He owned three investment properties in Philadelphia that were losing money, he was struggling with the administration of his mother's estate and had trouble funding repairs of the Property, which was held in trust for himself and his family members. He testified the Property had significant structural problems, that his mother had been a hoarder and cat owner, that the floors in the home were warped by cat urine, and that he had met with a realtor and developed a long list of repairs to be completed before the Property could be sold. He obtained an appraisal of the Property in mid-2012 that established a value of $170,000.00. He estimated that it would be three to four years before the Property would be ready to sell as he was making the repairs himself when he had time and extra funds. He used his own money, money from his company, and proceeds of a home equity loan on the Property. He has three brothers, all of whom grew up in the Property, and who agreed to wait until the repairs were complete before listing the Property for sale because it was not habitable.[6] He had no idea what, if anything he would receive from the sale of the Property, if it sold at all. According to Debtor, he understood, after discussion with Counsel, that his interest in the Trust need not be disclosed because it was of little to no value. He further testified that, at the time he met with Counsel, he was overwhelmed with his responsibilities and was relieved to have knowledgeable counsel upon whom he could rely.

Counsel agreed that Debtor was overwhelmed when they met to discuss the filing. He added that Debtor was struggling with his marriage and did not want to provide Counsel with information about his wife's finances. He did not want to involve her in the

---

[5] When asked why he failed to list the expense, Debtor testified that the premiums for the Prudential Life policy were paid directly out of Debtor's paycheck when he worked for Prudential Life. Thereafter, Debtor's wife paid them quarterly. He offered no other reason why this expense was not disclosed on the questionnaire.

[6] In fact, according to Debtor, the buyers of the Property did nothing with it for over a year, and then demolished the house.

bankruptcy. Counsel testified that Debtor's case required more time than a typical Chapter 7 case. Debtor had an unusual amount of questions and demanded a lot of Counsel's time. Counsel denied that Debtor provided him with any information about the Trust. He indicated that he did not review the folders the Debtor brought with him to the first meeting in detail, and that he gave all of the folders back to the Debtor for his use in completing the Bankruptcy Questionnaire.

Both Debtor and Counsel testified that, when the Trustee questioned Debtor about the Trust at the adjourned meeting of creditors, Debtor testified completely and accurately. Counsel stopped representing Debtor after the adjourned meeting of creditors, testifying that he did not believe he could continue his representation in light of Debtor's testimony that he acted on advice of Counsel. Debtor retained new counsel and testified that he complied fully with the Trustee's request for documents and, when she made clear her intention to assume responsibility for the Trust, he resigned voluntarily.[7] He testified that he never had a problem with disclosing information about the Trust in his bankruptcy, but that he relied on Counsel to tell him what to do.

Counsel testified that bankruptcy filings comprise five to ten percent of his practice. Preparation of a bankruptcy filing is a complicated process, requiring detailed analysis of, at a minimum, a debtor's assets, interests, claims, debts, expenses, relationships, and intentions. Debtors are typically overwhelmed with their lives and the bankruptcy process itself, some more than others. Reviewing the testimony of both Debtor and Counsel leads this Court to conclude that Debtor had no fraudulent intent when he signed his petition and schedules. Relying on Counsel to prepare his schedules, Debtor believed them to include all of the necessary information at the time he signed them. Therefore, the Court finds the Trustee failed to meet her burden of proof as to dischargeability. The Court further finds Debtor met his burden in proving his reliance on the advice of Counsel.

The Court will enter an order consistent with this decision.

Yours very truly,

/S/ *Christine M. Gravelle*
United States Bankruptcy Judge

CMG:rtp
Docket

---

[7] Ultimately, the state court appointed one of Debtor's brothers as trustee of the Trust.